UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHARLES RODERICK,

    Plaintiff,

v.                                                      Case No: 2:14-cv-84-FtM-DNF

CAROLYN W. COLVIN, Acting
Commissioner of Social Security[1],

    Defendant.

_____

## OPINION AND ORDER

Plaintiff, Charles Roderick, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED**, pursuant to § 205(g) of the Social Security Act, 42 U.S.C § 405(g).

**I. Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review**

**A. Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted, therefore, for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

B.     **Procedural History**

On October 12, 2010, Plaintiff filed an application for supplemental security income, alleging a disability onset date of July 24, 2008. (Tr. 25, 153-165). Plaintiff's request for benefits was initially denied on June 15, 2011, and upon reconsideration on July 28, 2011. (Tr. 25, 129, 143-144). Plaintiff filed a written request for a hearing on December 9, 2011. (Tr. 25). An administrative video hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on June 19, 2012. (Tr. 38-78). Plaintiff appeared in Fort Myers, Florida, and the ALJ presided over the hearing from Fort Lauderdale, Florida. (Tr. 25). On August 30, 2012, the ALJ rendered his decision finding that Plaintiff was not under a disability, as defined by the Social Security Act since October 12, 2010, the date Plaintiff's application was filed. (Tr. 25-33). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 2, 2014. (Tr. 1-6). Plaintiff filed a Complaint in the United States District Court on February 13, 2014 (Doc. 1). This case is now ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings (Doc. 17).

**C. Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[2] (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 12, 2010, the application date. (Tr. 27). At the second step, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) history of chronic lumbar pain, (2) intraspinal pain, (3) status post stomach surgery, and (4) mild scoliosis. (Tr. 27). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 28). At the fourth step, the ALJ found that Plaintiff had "the residual functional capacity to perform the full range of medium work as defined in 20 CFR 416.967(c)." (Tr. 28). Given this RFC, at the fourth step the ALJ found that Plaintiff is able to perform his

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

past relevant work as a real estate agent. (Tr. 32). The job of real estate agent is skilled and the exertion level is light. (Tr. p. 32).

Despite his finding at step four, the ALJ proceeded to step five and made the following alternative findings. (Tr. 32-33). The ALJ considered Plaintiff's age, education, work experience, and RFC and found that a finding of "not disabled" is directed by Medical-Vocational Rule 203.29, and there are jobs that exist in the national economy that Plaintiff is able to perform. (Tr. 32, 33).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v.*

*Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.    Analysis**

Plaintiff presents three issues on appeal: (1) whether the ALJ erred by discrediting the opinion of an examining DDS doctor because the ALJ gave no legitimate basis for rejecting the opinion; (2) whether the ALJ erred by discrediting the opinion of Plaintiff's treating physician because the ALJ gave no legitimate basis for rejecting the opinion; and (3) whether the ALJ's assessment that Plaintiff has the RFC to perform medium work is based on substantial evidence. (Doc. 18 p. 2).  The Court will address each in turn.

> **A.  Whether the ALJ erred by discrediting the opinion of an examining DDS doctor because the ALJ gave no legitimate basis for rejecting the opinion**

Plaintiff argues that the ALJ improperly discredited the opinion of Eshan Kibria, D.O. Plaintiff argues that Dr. Kibria's opinion as to Plaintiff's limitations is supported by the record and by Dr. Kibria's own examination of Plaintiff.  The Commissioner argues that Dr. Kibria's examinations showed normal range of motion in areas, and no tenderness, and his limitations did not comport with his examination findings.

An ALJ is required to state with particularity the weight he gives to the medical opinions of record and the reasons why.  *Shaw v. Astrue*, 392 F. App'x 684, 686 (11th Cir. 2010)[3], (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)), See also, *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006).  Without such a statement, the reviewing court is unable to

---

[3] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

determine whether the decision of the Commissioner was supported by substantial evidence. *Id*. (citation omitted). "Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. §404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records. *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Id*. (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Dr. Kibria examined Plaintiff for an independent medical examination for Social Security Disability on May 23, 2011 and again on April 23, 2012. (Tr. p. 276, 285). At the May 23, 2011 examination, Plaintiff complained of pain up and down his spine, C1-C4 massive "verve damage", poor sleep, and being unable to eat solid food because of having 90% of his stomach being removed. (Tr. p. 276). Dr. Kibria found Plaintiff had pain-free range of motion in his right shoulder; external and internal rotation of 60 degrees; and abduction of 130 degrees. (Tr. p. 277). Plaintiff's neck range of motion was normal. (Tr. p. 277). On the examination of Plaintiff's back, Dr. Kibria found passive pain-free lumbar range of motion which was moderately limited in extension, slightly limited in tilting left and slightly limited in tilting right. (Tr. p. 277). Plaintiff's lumbar range of motion was normal in all directions, and his single leg-raising test was pain-free up to 90 degrees bilaterally in a sitting position. (Tr. p. 277). Plaintiff was able to walk on heels and toes, and left quadriceps were 4/5 due to left groin pain. (Tr. p.

277). Dr. Kibria found Plaintiff to have normal gross and fine finger dexterity, was able to hold a cup, was able to hold a pencil/pen in both hands, was able to button and unbutton, and was able to open a door. (Tr. p. 277). Plaintiff's station and gait were normal, no assistive devices were needed or used, and Plaintiff was able to perform rapid alternating movement bilaterally without difficulty. (Tr. p. 277). Dr. Kibria concluded that Plaintiff had a history of low back pain and intraspinal pain but no myelopathy or radiculopathy. (Tr. p. 277). Plaintiff's scoliosis was mild, had dietary restrictions, anxiety, was on opiate therapy and had constipation with a history of osteomalacia and low testosterone. (Tr. p. 277). Dr. Kibria determined that Plaintiff's lumbar spine extension and lateral flexion were 15°, shoulder forward elevation was 130°, and shoulder external rotation and internal rotation were 60°. (Tr. p. 278).

On April 23, 2012, Plaintiff returned to Dr. Kibria for a second independent medical examination for Social Security Disability. (Tr. p. 285). Plaintiff's chief complaints were pain up and down the spine, massive "verve" damage at C1-C4; poor sleep, could not eat solid foods, anxiety, osteomalacia, low calcium, and Plaintiff indicated he was seeing Dr. Hussey for pain. (Tr. p. 285). Dr. Kibria noted that "patient practically lying in exam chair keeps eyes closed and frequently yawning." (Tr. p. 285). Upon examination, Dr. Kibria found Plaintiff's range of motion in both shoulders to be pain-free with forward flexion and abduction of 120°, and straight leg raise was positive at 70° bilaterally. (Tr. p. 286). Plaintiff could walk on heels and toes with left quadriceps with 4/5 due to left groin pain. (Tr. p. 286). Dr. Kibria found Plaintiff's gross and fine finger dexterity to be normal, Plaintiff was able to hold a cup and pencil/pen in both hands, was able to button and unbutton, and was able to open a door. (Tr. p. 286). Dr. Kibria noted that Plaintiff was seen carrying a file carrier and a water mug possibly weighing over 20 lbs. (Tr. p. 286). Plaintiff had normal station and gait, needed no assistive devices, and was

able to perform rapid alternating movement bilaterally without difficulty. (Tr. p. 286). Dr. Kibria's impression was a history of chronic lower back pain and intraspinal pain, mild scoliosis, restrictive diet, anxiety, a history of osteomalacia, a history of a recent fall but without bruises, and a history of fatigue. (Tr. p. 286).

On April 23, 2012, Dr. Kibria completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Tr. p. 290-295). Dr. Kibria found Plaintiff able to lift 10 lbs. frequently, 20 lbs. occasionally, carry 10 lbs. occasionally, never carry over 10 lbs., and supported his decision by stating that "hand bag weighs 20#." (Tr. p. 290). Dr. Kibria limited Plaintiff to sitting for 1 hour, standing for 1/2 hour, and walking for 1/2 hours without interruption; and limited Plaintiff to sitting for 2 hours, standing for 1 hour and walking for 1 hour in an 8-hour work day, and wrote underneath "lie down prone" for 4, presumably hours to complete an 8 hour workday. (Tr. p. 291). Dr. Kibria also found that Plaintiff was able to reach, handle, finger and feel with both hands frequently and push/pull with both hands occasionally. (Tr. p. 292). Dr. Kibria found Plaintiff able to operate foot controls with both feet frequently and indicated that Plaintiff drives a car. (Tr. p. 292). Dr. Kibria noted Plaintiff was able to climb stairs and ramps occasionally but could never climb ladders, scaffolds, balance stop, kneel crouch or crawl. (Tr. p. 293). Dr. Kibria determined that Plaintiff could be exposed to unprotected heights, moving mechanical parts, dust, odors, fumes, pulmonary irritants, extreme cold, and vibrations occasionally; could be exposed to operating motor vehicle, humidity, wetness, and extreme heat frequently; and could be exposed to moderate office noise. (Tr. p. 294). Dr. Kibria noted that Plaintiff has headaches two times per month. (Tr. p. 294). Dr. Kibria found Plaintiff to be able to shop, travel alone, ambulate without assistance, walk a block at a reasonable pace, use public transportation, climb a few steps at a reasonable pace, prepare simple

meals and feed himself, care for his own personal hygiene, and sort, handle or use paper/files, with a note quoting Plaintiff, "if I walk a block I feel it the next day." (Tr. p. 295).

The ALJ reviewed Dr. Kibria's records from May 23, 2011, noting that Plaintiff had pain-free range of motion in his right shoulder, noting the degrees of rotation and abduction, his normal neck range of motion, his passive pain-free lumbar range of motion which was moderately limited in extension and slightly limited in tilting. (Tr. p. 30). The ALJ noted that Plaintiff's lumbar range of motion was normal, he could walk on his heels and toes, did not need assistive devices, and had a normal station and gait. (Tr. p. 30-31). The ALJ also noted that Plaintiff's hand grip was normal, he was able to hold a cup, and he could perform rapid alternating movement bilaterally without difficulty. (Tr. p. 31). The ALJ noted that Dr. Kibria diagnosed Plaintiff with a history of chronic lower back pain, intraspinal pain, and mild scoliosis. (Tr. p. 31).

The ALJ also reviewed Dr. Kibria's records from April 23, 2012. (Tr. p. 31). The ALJ noted that Dr. Kibria found Plaintiff to have pain-free range of motion in his shoulders, his forward flexion and abduction were 120°, his straight leg raise was positive at 70°, he had no pronation or drift in the upper extremities, and he could walk on his heels and toes. (Tr. p. 31). The ALJ noted Plaintiff's hand grip, normal station, gait, and sensory testing were within normal limits, and Plaintiff was seen carrying a file carrier and a water mug that weighed more than 20 pounds. (Tr. p. 31). The ALJ noted that Plaintiff needed no assistive devices, and was able to perform rapid alternating movement bilaterally without difficulty. (Tr. p. 31). The ALJ reviewed Dr. Kibria's medical source statement and the limitations Dr. Kibria imposed on lifting, sitting, standing and walking. (Tr. p. 31). The ALJ gave little weight to Dr. Kibria's opinion as to Plaintiff's impairments and limitations. (Tr. p. 31). The ALJ found Dr. Kibria's opinions

generally to not be supported by other evidence of record and "goes against his own consultative examination, which he reported that the claimant could walk on his heels and toes (Exhibit 10F and 13 F)." (Tr. p. 31). The ALJ also noted that Dr. Kibria found Plaintiff's sensory testing to be within normal limits, his grip was normal, his station and gait were normal, he needed no assistive devices, and he was able to perform rapid alternating movement bilaterally without difficulty and his lumbar spine x-ray was normal. (Tr. p. 31).

Plaintiff argues that the ALJ erred by only citing to normal findings by Dr. Kibria, and failing to cite to any limitations which support Dr. Kibria's assessment. At the April 23, 2012 assessment, Plaintiff argues that Dr. Kibria's examination showed Plaintiff was positive at 70 degrees bilaterally and his left quadriceps strength was 4/5, and that Plaintiff was practically lying down in the examination chair and yawning. Plaintiff argues that these limitations show that Dr. Kibria's examination was consistent with his assessment.

The Court agrees that the ALJ cannot pick and choose from the record only the evidence that supports his position but rather must consider all the evidence. S*ee, Joyner v. Astrue,* 2011 WL 4530678, *4 (M.D. Fla. Sept. 29, 2011) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)). An ALJ must consider all evidence which making a determination as to whether a claimant is disabled. *Id*. (citing 20 D.F.R. § 404.1520(a)(3)). The ALJ did carefully review both of Dr. Kibria's examination records and assessment. The ALJ noted that Plaintiff had a positive leg test of 70° in his decision. (Tr. p. 31). The ALJ summarized the other examination results found by Dr. Kibria, and although he did not specifically mention the quadriceps strength and fatigue, he did cite to many other of Dr. Kibria's findings in analyzing Dr. Kibria's opinion, and it is clear that the ALJ carefully reviewed all of Dr. Kibria's examination records as well as Dr. Kibria's assessment in determining the weight to give to Dr.

Kibria's assessment. Further, Plaintiff did not explain how the quadriceps strength of 4/5 or the mention that Plaintiff was lying on the exam chair and yawning would correlate with the severe limitations found by Dr. Kibria. Therefore, the Court finds that the ALJ did not err in his review of Dr. Kibria's own records in determining that Dr. Kibria's records were not consistent with Dr. Kibria's assessment of Plaintiff's limitations. Plaintiff then argues that the medical record of Dr. Francis Harrington supports Dr. Kibria's assessment, however, the ALJ also gave little weight to Dr. Harrington's opinion. Even though Dr. Kibria's assessment is supported by Dr. Harrington's assessment, as the Court latter finds, the ALJ did not err in giving little weight to Dr. Harrington's assessment, and therefore, did not err even though both Dr. Kibria and Dr. Harrington's opinions support each other.

**B. Whether the ALJ erred in discrediting the opinion of the Plaintiff's treating physician, because he gave no legitimate basis for rejecting this opinion**

Plaintiff argues that the ALJ erred in giving little weight to the opinion of Francis Harrington, M.D. The Commissioner argues that Dr. Harrington's records do not support his assessment of Plaintiff's limitations. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physician and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social*

*Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Plaintiff was treating with Jane M. Harrington, M.D. and Francis E. Harrington, M.D. beginning in 2009. (Tr. p. 245). On April 12, 2010, Plaintiff went to Dr. Jane Harrington complaining of injuring his right middle finger while practicing Kempo (a type of martial arts). (Tr. p. 257). He was also experiencing panic attacks which were fairly well-controlled with Xanax, and he had gastric cramping. (Tr. p. 257). Dr. Jane Harrington continued him on medications. (T. p. 257). On September 8, 2010, Plaintiff saw Dr. Francis Harrington for swollen lymph nodes on both sides of the groin and under the right arm. (Tr. p. 258). Dr. Francis Harrington referred Plaintiff to oncology for night sweats, pain in side, enlarged lymph nodes, and fatigue. (Tr. p. 258-260). On November 20, 2010, Plaintiff saw Dr. Francis Harrington for pain medication refills of MS Contin and Morphine Sulfate. (Tr. p. 261). On December 22, 2010, Plaintiff returned to see Dr. Francis Harrington for a routine visit. (Tr. p. 262). On January 13, 2011, Plaintiff saw Dr. Francis Harrington for insomnia and pain relief and Dr. Harrington prescribed MS Contin, Morphine Sulfate, as well as Xanax. (Tr. p. 263). On February 10, 2011,

March 1, 2011, April 6, 2011, May 24, 2011, July 18, 2011, and August 12, 2011, Plaintiff returned to Dr. Francis Harrington for pain medication refills. (Tr. p. 264, 308-312).

On April 6, 2011, Dr. Francis Harrington wrote a letter concerning Plaintiff's medical conditions. (Tr. p. 306). Dr. Harrington stated that a recent CAT scan[4] "revealed a spine then I would guess [sic] belonged to an 80 year old, not someone of Mr. Roderick's youth." (Tr. p. 306). Dr. Harrington stated that Plaintiff suffers from years of fatigue, weakness, osteomalacia, problems with the endocrine system, back pain and joint pain and what he believes may be metabolic syndrome. (Tr. p. 306). Dr. Harrington noted that Plaintiff had 90% of his stomach removed and has shown an intolerance for solid foods since his surgery in July 2008. (Tr. p. 306). Dr. Harrington states that Plaintiff has problems absorbing his medications because of the portion of his stomach that was removed, and is suffering from severe vitamin deficiencies, especially Vitamin D deficiency. (Tr. p. 306). Dr. Harrington concluded that Plaintiff's osteomalacia was attributable to his vitamin deficiency. (Tr. p. 306). Dr. Harrington states that a bone density scan in November 2009 shows softening of several vertebrae, his hip, and pelvic bones, and he believes that his skeletal structure is degenerating severely because he has lost two inches in height in a little over 10 months. (Tr. p. 306). Dr. Harrington opines that it is just a matter of time before either Plaintiff's renal system will fail, he suffers from severe cardiac issues, and/or his bones will crumble. (Tr. p. 306). For all of these reasons, Dr. Harrington classifies Plaintiff as totally disabled.

On April 27, 2011, Dr. Fritz Harrington completed a form which indicate Plaintiff had residual reflexes in upper and lower body, had spasms in his back, had limited range of motion due to his spine, was positive in straight leg raises, had a history of Vitamin D deficiency, had a

---

[4] The Court does not find the CAT scan results of record.

troubling gait, was very weak, had poor stability, and had no balance. (Tr. p. 269). On October 7, 2011, Plaintiff saw Dr. Francis Harrington for pain medication refills, and for vomiting more than 2-3 times a day, and testosterone issues. (Tr. p. 313). Dr. Francis Harrington continued with the same medications. (Tr. p. 313). On October 28, 2011, Plaintiff saw Dr. Francis Harrington for refills on pain medication and orthopedic shoes, and on November 28, 2011, Plaintiff saw Dr. Francis Harrington for pain medication refills. (Tr. p. 314-315). On December 22, 2011, Plaintiff saw Dr. Francis Harrington for a routine visit and for metabolic problems, refill for medications, gaining weight, and mentioned he was seeing a specialist in "boca." (Tr. p. 316).

The ALJ acknowledged that Dr. Harrington treated Plaintiff from July 17, 2009 through March 1, 2011. The ALJ noted that Plaintiff was given testosterone serum, had a right hand x-ray for finger swelling, and had no evidence of lymphoma or metastatic disease. (Tr. p. 30). The ALJ summarized Dr. Harrington's letter of April 6, 2011, and the report of April 27, 2011 noting that Dr. Harrington found Plaintiff to have residual reflexes in his upper and lower body, complaints of spasms in his back, limited range of motion due to pain, positive straight leg raises, and a history of Vitamin D deficiency. (Tr. p. 30). The ALJ gave little weight to Dr. Harrington's opinions as to Plaintiff's impairments and limitations. (Tr. p. 30). The ALJ found that Dr. Harrington's opinions were not generally supported by other evidence of record, and his consultative examination reported that Plaintiff could walk on his heels and toes. (Tr. p. 30). The ALJ found Plaintiff's sensory testing to be within normal range, his hand grip to be normal, he could hold a cup in both hands, he had normal station, he had normal gait, he needed no assistive devices, and he was able to perform rapid alternating movement bilaterally without difficulty, and his lumbar spine x-ray was normal. (Tr. p. 30).

The Court carefully reviewed Dr. Harrington's examination records, and compared them to his letter of April 6, 2011, and report of April 27, 2011. Even though Dr. Harrington was Plaintiff's treating physician, the records for his examinations are very brief and do not provide much support for his in-depth letter of April 6, 2011 regarding Plaintiff's limitations. Dr. Harrington's notes contain few if any references to objective testing or examinations, and few notes as to examination findings. Rather, most of Plaintiff's visits were to obtain pain medication refills, and on these visits, there are no records of any examination or testing. Dr. Harrington's letter of April 6, 2011 and his report of April 27, 2011 are conclusory and not supported by his medical records. The ALJ did not err in giving little weight to Dr. Harrington's opinions.

### C. Whether the ALJ's assessment that Plaintiff has the residual functional capacity to perform medium work is based on substantial evidence

Plaintiff argues that the ALJ erred in finding that Plaintiff has the residual functional capacity ("RFC") to perform a full range of medium work as defined in 20 C.F.R. § 416.967(c). Plaintiff contends that the ALJ determined at step two that the Plaintiff suffered from the following severe impairments: chronic lumbar pain, intraspinal pain, status post stomach surgery, and mild scoliosis. Plaintiff asserts that even though the ALJ found these impairments to be severe, he did not explain how he reached the conclusion that Plaintiff is able to stand and/or walk for a total of 6 hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday. Plaintiff refers to Dr. Harrington's assessment to support his argument, however, the ALJ gave little weight to Dr. Harrington's assessment of April 6, 2011, and the Court determined the ALJ had not erred in giving Dr. Harrington's assessment little weight.

Plaintiff refers to records from Harry J. Walter, D.O. which indicate that from July 1, 2010 to October 11, 2010, Plaintiff had night sweats, swollen lymph nodes, no appetite, only able

to take fluids, abdominal tumors, joint pain, a bump on his left groin, and hand, foot and ankle edema. (Tr. p. 235-237). Dr. Walter also notes on July 1, 2010, that Plaintiff trains for a triathlon. (Tr. p. 236). Plaintiff also refers to going to Gulf Coast Medical Center on September 25, 2011 for complaints of nausea and vomiting. (Tr. p. 299). Plaintiff was given fluids and something for nausea and discharged home. (Tr. p. 300). Plaintiff also went to Neuroscience & Spine Associates from February 15, 2012 through April 11, 2012, for chronic pain management. (Tr. p. 329). F. Desmond Hussey, M.D. determined that Plaintiff had probable fibromyalgia, opioid tolerance, anxiety disorder, Vitamin D deficiency, hypogonadism, and osteoporosis. (Tr. p. 333). Dr. Hussey recommended that Plaintiff obtain a confirmation as to the diagnosis of fibromyalgia. (Tr. p. 333). On March 13, 2012, Dr. Hussey saw Plaintiff, noting that his pain medication did help. (Tr. p. 324). Dr. Hussey did not have a diagnosis, but was modifying his prescriptions. (Tr. p. 327). Plaintiff also went to the emergency room at NCH North Collier Hospital on January 10, 2013 for complaints of nausea and vomiting and was discharged. (Tr. p. 10-12).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to his past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e). However, the Eleventh Circuit has consistently

held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

Plaintiff failed to show that the medical records from Dr. Walter and the visits to the emergency room were more than isolated incidents. Further, the RFC assessment of Thomas Peele, M.D. on July 27, 2011 supports the ALJ's finding that Plaintiff is able to perform a full range of medium work. (Tr. p. 125-127). Dr. Peele was a consultative examiner. Dr. Peele reviewed Dr. Harrington's treatment records and his letter finding that Plaintiff was totally disabled. Dr. Peele stated that Dr. Harrington's medical source statement contradicts the medical evidence of record and other medical sources and gave it only partial weight. (Tr. p. 125). Dr. Peele also reviewed Dr. Kibria's records of May 23, 2011 and gave them great weight. Dr. Peele determined that Plaintiff was able to lift 50 occasionally, 25 pounds frequently, stand and or walk for 6 hours in an 8-hour workday, sit for 5 hours in an 8-hour workday, and unlimited push or pull. (Tr. p. 125-126). Dr. Peele noted that in Dr. Harrington's notes of April 12, 2010, Plaintiff hurt his finger practicing Kempo karate, and in Dr. Walter's notes dated July 1, 2010, indicated Plaintiff was training for a triathlon. (Tr. p. 126). Dr. Peele noted Plaintiff's swollen lymph nodes but no lymphoma was found. (Tr. p. 126). Dr. Peele also noted that the consultative examination of May 23, 2011 found Plaintiff with normal gait, strength, sensation lumbar flexion normal through extension and lateral flexion limited to 15 degrees. (Tr. p. 126) Dr. Peele noted

mild limitation in right shoulder range of motion but otherwise normal range of motion throughout. (Tr. p. 126). Further, Dr. Peele noted Plaintiff's single leg raises was negative and lumbar x-ray of June 1, 2011 was normal. (Tr. p. 126). Dr. Peele found that Dr. Harrington's opinion was inconsistent with other evidence in the record which rendered it less persuasive. (Tr. p. 127). Dr. Peele determined that Plaintiff was able to return to his past relevant work as a real estate agent as it was actually performed, and found Plaintiff to be not disabled. (Tr. p. 127).

The ALJ carefully reviewed all of the relevant medical records in this case. He gave less weight to the opinions of Dr. Kibria and Dr. Harrington. The ALJ's RFC finding was consistent with the findings of Dr. Peele who also reviewed Dr. Kibria and Dr. Harrington's records. Although Plaintiff argues that citing to the instances in the record in April of 2010 that Plaintiff was practicing Kempo karate and in July 2010 when Plaintiff was training for a triathlon is picking and choosing isolated incidents in the record, these two very physical activities do weigh against Plaintiff having the severe limitations set forth by Dr. Kibria and Dr. Harrington. The ALJ's determination that Plaintiff is able to perform a full range of medium work and is able to return to his past relevant work as a real estate agent is supported by substantial evidence in the record and is consistent with Dr. Peele's findings.

Although unclear, Plaintiff also appears to be asserting that the ALJ erred by substituting his vocational opinion for that of a vocational expert. "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may not exclusively rely on the grids when the "'claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that

significantly limit basic work skills.'" *Id*. (citations omitted).  In this case, the ALJ determined that Plaintiff has the RFC to perform a full range of medium work and can return to his past relevant work as a real estate agent, therefore, the ALJ has no duty to obtain the assistance of a vocational expert.

### III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 24, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties